**UNITED STATES of America**

v.

**James GAINES; Tracey Harris; Tracey Mason; William Day, a/k/a "William McNeil"; Julius Pickard; and Dallas Long, a/k/a "David Shabazz".**

**Crim. No. 89–00012.**

United States District Court, E.D. Pennsylvania.

Aug. 18, 1989.

---

Ronald G. Cole, Strike Force, for U.S.

Thomas Colas Carroll, Philadelphia, Pa., for Gaines.

Andrew G. Gay, Philadelphia, Pa., for Harris.

Harold M. Kane, Philadelphia, Pa., for Mason.

Eugene P. Tinari, Philadelphia, Pa., for Day.

Stephen R. LaCheen, Philadelphia, Pa., for Pickard.

Michael E. Wallace, Philadelphia, Pa., for Long.

### OPINION

WALDMAN, District Judge.

On January 11, 1989, defendants were indicted for conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841. After trial on March 29 through March 31, 1989, the jury found all defendants guilty on both counts. Counsel for defendant Pickard filed post-trial motions on April 7, 1989, raising 16 points and seeking alternatively: dismissal of the indictment pursuant to Rule 34 of the Federal Rules of Criminal Procedure; acquittal pursuant to Rule 29; or a new trial pursuant to Rule 33. No supporting memorandum of law was filed within the time prescribed by Local Rule Cr.Pro. 14 or since. The Court has considered each of the numerous contentions and, based on the following, the motions will be denied.

### BACKGROUND

The following was adduced at the hearing of March 27, 1989 on defendants' motion to suppress evidence. On November 29, 1988, a confidential informant told the Philadelphia police that he or she had been inside an apartment occupied by Gaines at the Sedgewick Station Apartment complex and observed him and other unidentified black males on several occasions during the prior one-month period with large quantities of cocaine and vials containing "crack," and that they were packaging the drugs for sale. The informant also reported observing large amounts of cash, handguns and a shotgun at the apartment.

Based on this information, Philadelphia Police Officer Donald Snead secured a search warrant from a Philadelphia bail commissioner. There was no federal involvement in the investigation, obtaining the warrant, or conducting the search. Federal authorities learned of this matter only after defendants were arrested.

On December 1, 1988, six Philadelphia police officers executed the search warrant. Officer Steven Avato, who supervised the search, knocked on the apartment door and yelled, "Police." He heard someone inside exclaim, "Oh [expletive], the cops." Avato then ordered Officer Donald Snead to break the door open with a battering ram and five officers entered the apartment.[1]

---

1. Avato testified at the suppression hearing that he also said, "We have a warrant," and heard

The following additional evidence was adduced at trial. Gaines had executed a one-year lease for this one-bedroom apartment, effective November 1, 1988. In executing the warrant, Avato entered the apartment first, followed by Snead and then three other officers. They observed Gaines, Mason, Harris and Long around a card table near the door. On it were two dishes with cocaine, small plastic bags and tape. At Gaines' foot was a fully-loaded .357–caliber Magnum handgun.

Mason, Long and Harris were getting up from this table. Mason was forced to the ground, while Harris and Long ran to the kitchen where they were apprehended. McNeil and Pickard were seated at a second card table with $9,734 in cash. Both fled to the bedroom. McNeil was apprehended in the bedroom closet. Also in the closet were a triple beam scale and trash bag containing $79,081 in cash.

The apartment was sparsely furnished. There were two couches and a television in the living room. The kitchen had two or three cooking utensils and the refrigerator was empty except for some ice cream and fast food. There was no furniture in the bedroom, and no clothes in the closet. The search also uncovered nine rolls of Scotch tape, two wrappers consistent with the packaging used for a kilogram of cocaine, boxes of clear plastic packets, small sandwich bags, larger Ziplock plastic bags, three electronic paging devices, spoons and a playing card. 855.9 grams of cocaine was recovered with an estimated "street value" of $85,000.

*DISCUSSION*

The only post-trial motions were filed by counsel for defendant Pickard. Pursuant to a cover page, they purportedly were filed on behalf of all defendants. Counsel never obtained permission to proceed in this manner, and to do so is undesirable, if not inappropriate. The filing of motions for six defendants by counsel for one creates potential conflicts.[2] Further, counsel for Pickard purports to advance objections on behalf of all defendants to rulings on pretrial motions, none of which were filed by all. Some matters were asserted and preserved by as few as one defendant.

Nevertheless, with no intent to foreclose the government from later arguing that some defendants failed adequately to preserve some matters, the Court will consider each contention raised in Pickard's post-trial motions as to each defendant who, in fact, raised that contention at or prior to trial.[3]

### I. *Motion to Dismiss Indictment*

■ At oral argument on defendants' motions to suppress, counsel for Pickard asserted that the Government impermissibly introduced to the Grand Jury testimony regarding the defendants' connection with the "Junior Black Mafia." Although counsel never made a motion, written or oral, the Court construed this objection as a Rule 12(b)(2) motion to dismiss the Indictment. The Court denied the motion and Pickard now asserts this was error.

Officer Avato briefly described to the grand jury the existence of the Junior Black Mafia, its purpose, which is to control the distribution of narcotics in various sections of Philadelphia, and that the defendants had been "linked to" and "involved with" that organization.

Pickard claims that eliciting this testimony was prejudicial and that under *U.S. v. Serubo*, 604 F.2d 807 (3d Cir.1979) the in-

---

the movement of feet and chairs. Snead did not recall the reference to a warrant and made no mention of hearing any movement in his preliminary hearing testimony which was made part of the record. Snead was behind Avato and further from the door. Thus, any differences in the officers' testimony may be reconcilable. In ruling on the motion, however, the court relied on Snead's version. Moreover, given the Court's decision, the result would be the same under either version.

**2.** For example, in this case, Pickard and McNeil objected to the exclusion of certain testimony regarding phone calls made to Gaines' apartment during the search. Their position is in conflict with the interests of Harris, Mason and Long who maintained at trial that the proffered testimony in question was properly excluded.

**3.** Unlike the pre-trial motions, almost every objection made during trial was made on behalf of each defendant.

dictment must be dismissed for prosecutorial misconduct. The government contends that any error in the grand jury proceedings was rendered harmless by the petit jury's guilty verdicts, citing *U.S. v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986).

There is disagreement as to whether the holding in *Mechanik* is limited to technical violations of grand jury procedure or extends to any but egregious misconduct. *See U.S. v. Fountain,* 840 F.2d 509, 514–515 (7th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 533, 102 L.Ed.2d 564 (1988); *Porter v. Wainwright,* 805 F.2d 930, 941–942 (11th Cir.1986), *cert. denied,* 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987); *U.S. v. Taylor,* 798 F.2d 1337, 1337–1339 (10th Cir.1986). The Third Circuit reads *Mechanik* as limited to technical infractions and inapplicable to abuses which violate a defendant's right to fundamental fairness. *U.S. v. Fisher,* 871 F.2d 444 (3d Cir.1989); *U.S. v. Johns,* 858 F.2d 154, 159 (3d Cir.1988). The Supreme Court recently declined to resolve this disagreement. *See Midland Asphalt Corp. v. U.S.,* — U.S. ——, 109 S.Ct. 1494, 1498, 103 L.Ed.2d 879 (1989). In this case, the court finds that there was no abuse, and certainly none that affected the fundamental fairness of the grand jury proceedings.

Unlike *Serubo,* the challenged testimony here was not completely irrelevant to the underlying case. A narcotics unit officer testified that the defendants were in fact associated with the Junior Black Mafia, a group involved in narcotics trafficking. Limited testimony regarding the group, particularly to an investigative grand jury, was not improper. Moreover, there clearly was sufficient evidence to support the indictment without this testimony. The defendants were found in a sparsely furnished apartment with almost 900 grams of cocaine, cutting and packaging paraphernalia and almost $100,000 in cash. It is inconceivable that the grand jury would not have returned an indictment absent the challenged testimony. The prosecutor's conduct in allowing this testimony certainly did not constitute flagrant or persistent abuse and, thus, even if it were deemed to be inappropriate, the indictment would be valid. *See Serubo,* 604 F.2d at 816–17.

## II. *Motion for Judgment of Acquittal*

■ Defendants moved for judgment of acquittal pursuant to Rule 29, contending that the evidence merely established their presence at the scene.[4]

"In considering a motion for judgment of acquittal, the pertinent question is 'whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'" *United States v. Munford,* 431 F.Supp. 278, 287 (E.D.Pa.1977). After considering the evidence in a light most favorable to the government, the jury's verdict must be sustained if there is substantial evidence to support it. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). There clearly is sufficient evidence to support this jury's verdict.

■ The government contends that all defendants jointly and constructively possessed the cocaine. Constructive possession can be shown by evidence that one had contraband under his dominion or control or knowingly had the power to exercise dominion or control over it. *United States v. Bonham,* 477 F.2d 1137, 1138 (3d Cir. 1973); *United States v. Davis,* 461 F.2d 1026, 1035 (3d Cir.1972). One has joint constructive possession when he shares such dominion and control with others. *Davis,* 461 F.2d at 1035. The "mere proximity to [narcotics], or mere presence on the property where [they are] located or mere association with the person who does control the [narcotics], is insufficient to support a finding of possession." *Id.* at 1036.

---

4. Only counsel for Pickard filed a Rule 29 motion, however, during the argument thereon, counsel for the other defendants manifested a desire to join in that motion. (For purposes of this motion, the interests and positions of the parties were in harmony.) The court thus considered the motion and post-trial argument as to all defendants.

The evidence in this case establishes more than mere presence or association. Gaines was the lessee of the apartment, from which a jury reasonably could infer dominion and control over its contents. The evidence indicated that this was a multi-person operation. There was a substantial amount of cocaine, wrappers consistent with packaging for kilogram quantities, electronic paging devices, substantial measuring and packaging paraphernalia, and large amounts of cash. A jury reasonably could conclude that all the occupants of the apartment were involved in preparing cocaine for distribution.

This evidence was sufficient for the jury to have concluded reasonably that the defendants were involved in a narcotics distribution conspiracy and that each had constructive possession of the cocaine. In *United States v. Staten*, 581 F.2d 878, 885 (D.C.Cir.1978), the Court held that the defendant's presence in another's apartment "reeking with telltale indicia of an ongoing drug distributing enterprise could rationally have been viewed as a privilege reserved exclusively for participants." A defendant's voluntary presence in an area "obviously devoted to the preparation of drugs for distribution" is evidence of the defendant's criminal involvement. *Id.* at 885, n. 67.

Such an inference is further bolstered here by testimony that the apartment functioned as a "cut-house," and that telephone calls were received during the search by police from callers, willing to speak to whomever answered, indicating that they were waiting at given locations for someone from the apartment to make a delivery. This included a caller who said, "we need 200 bags; someone was supposed to have [it] here an hour ago."

There was also evidence from which the jury could infer that all except Gaines attempted to flee.[5] In *United States v. Morando–Alvarez*, 520 F.2d 882, 884–85 (9th Cir.1975), the Court held that defendant's flight from a car containing marijuana was sufficient for the jury to conclude both were in joint constructive possession of the drugs. From all the evidence, the jury reasonably could have concluded that there was flight and that it reflected consciousness of guilt. *See U.S. v. Beard*, 775 F.2d 1577, 1581 (11th Cir.1985), *cert. denied*, 475 U.S. 1030, 106 S.Ct. 1235, 89 L.Ed.2d 343 (1986); *DeWitt v. Department of the Navy*, 747 F.2d 1442, 1444 (Fed.Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985); *U.S. ex rel. O'Connor v. State of New Jersey*, 405 F.2d 632, 638 (3d Cir.1969), *cert. denied*, 395 U.S. 923, 89 S.Ct. 1770, 23 L.Ed.2d 240 (1969).

In *U.S. v. Davis, supra*, the Third Circuit upheld convictions on similar facts. In *Davis*, the police entered a three-room apartment occupied by appellant and two others. The appellant and a co-defendant were standing next to a table with heroin, glassine bags and measuring paraphernalia. The Court found that this evidence revealed someone recently had been packaging heroin, and that the jury reasonably could infer therefrom that the appellant had constructive possession of the heroin. *Davis*, 461 F.2d at 1036. *See also United States v. Knight*, 705 F.2d 432, 433–34 (11th Cir.1983) (crew members' presence on ship where large quantity of marijuana obvious held sufficient to sustain conviction for possession with intent to distribute and conspiracy to do same); *Staten*, 581 F.2d at 885 (presence in apartment and association with co-defendant sufficient to convict for possession with intent to distribute where narcotics and distribution paraphernalia openly strewn about).

The three cases relied upon by defendants are distinguishable. In *United States v. Pratt*, 429 F.2d 690 (3d Cir.1970), an undercover agent arranged to buy three bags of heroin from a co-defendant. The co-defendant was then observed speaking with the defendant, who approached the officer's car, peered in, and sat in the back seat while his co-defendant conducted the

---

**5.** Defendants argued that their flight was a natural reaction to the entry of four men with weapons; however, the jury reasonably could have concluded that defendants knew these men were police from testimony that their jackets clearly identified them as such, they announced their identity, and at least one defendant exclaimed, "Oh [expletive], the cops."

sale in the front seat. The Court held that this was insufficient to convict the defendant of the sale of heroin. The defendant in *Pratt* was not charged with a possessory offense and thus constructive possession was not even in issue. Moreover, *Pratt* did not involve presence in a "cut-house" where a highly visible, large-scale narcotics operation was being conducted.

In *Bailey v. United States*, 416 F.2d 1110 (D.C.Cir.1969), the only evidence introduced against defendant in a prosecution for aiding and abetting robbery was testimony that he had been seen in the company of the robber prior to the crime. As the victim approached the two men on the street, the defendant walked away. The other man then robbed the victim. The crime did not involve possession and the only evidence against defendant was his apparent association with the perpetrator.

In *Williams v. United States*, 361 F.2d 280 (5th Cir.1966), the only case cited by defendants involving a possessory offense, the defendant was charged with possession of illegal liquor jugs. He was riding with two men in a car containing the jugs and paraphernalia associated with a distillery. Defendant's uncontradicted testimony was that he did not know the men and they merely had offered him a ride as he was walking home. The case did not involve open, large-scale ongoing criminal activity to which only participants likely would be privy.

The *Davis* case is far more analogous to the instant case.

### III. *Motion for New Trial*

Defendants have raised numerous grounds for a new trial: denial of due process, denial of the motion to suppress, objections to evidentiary rulings, prosecutorial misconduct and the Court's refusal to give a lesser included offense charge.

#### A. Denial of Due Process

■ Defendants first contend that they were denied due process when counsel did

not have an opportunity to present oral argument on the issue of the facial validity of the affidavit and search warrant for Gaines' apartment.[6] Pursuant to Local Rule Cr.Pro. 11, oral argument is discretionary, to be granted only when the Court deems it necessary. As a general matter, denial of oral argument does not violate due process. *See United States v. Marines*, 535 F.2d 552, 556 (10th Cir.1976); *N.L.R.B. v. Local No. 42, International Ass'n of Heat and Frost Insulators*, 476 F.2d 275, 276 (3d Cir.1973).

In deciding whether an affidavit supports a finding of probable cause, the Court is to determine whether "all the circumstances set forth in the affidavit" establish a fair probability that the contraband will be found in the place identified. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). On such an issue, oral argument is generally not necessary or helpful. Moreover, defendants had ample opportunity to present any arguments they may have had on this issue in written memoranda, as required by Local Rule Cr.Pro. 11, but failed to do so.

■ Defendants next argue that the Court's refusal to order *in camera* production of the informant, after ruling that his or her identity need not be disclosed, was a denial of due process. Only Gaines sought *in camera* production of the informant prior to trial, and thus only he preserved this issue.

Gaines contended that the informant did not exist. He based this allegation on testimony in *United States v. Wilson*, No. 88-00282 (E.D.Pa.1988), in which two former Philadelphia police officers in a different squad with no involvement in this case testified that some officers had at various times over five years ago fabricated the existence of an informant in obtaining search warrants. Gaines also submitted an affidavit denying that narcotics were in open view in his apartment prior to November 30, 1988 and, thus, the informant's

---

**6.** Only Gaines, Harris and Mason raised and preserved the issue of sufficiency of the affida- vit before trial.

claim of having seen cocaine there was untrue. Production of the informant *in camera* was not warranted.

■ The government has a privilege to protect an informant's identity to ensure the free flow of information between citizens with knowledge of crime and law enforcement officials. *Roviaro v. United States*, 353 U.S. 53, 59–62, 77 S.Ct. 623, 627–629, 1 L.Ed.2d 639 (1957). This privilege can be overcome by showing that disclosure is "essential to a fair determination of a cause." *U.S. v. Jiles*, 658 F.2d 194, 198 (3d Cir.1981). Mere speculation will not defeat the privilege. *U.S. v. Bazzano*, 712 F.2d 826, 839 (3d Cir.1983), *cert. denied*, 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984). Where, as here, the informant was not a participant in or witness to the acts charged but was merely a tipster whose role was to validate the search, disclosure of his or her identity is not required. *McCray v. Illinois*, 386 U.S. 300, 313–314, 87 S.Ct. 1056, 1063–1064, 18 L.Ed.2d 62 (1967); *Bazzano, supra.* Arguably, an *in camera* hearing with an informant violates the privilege less than public disclosure of his or her identity. To require production of an informant upon the uncorroborated statement of a defendant that merely contradicts the informant's information would still substantially and unnecessarily compromise the privilege and the public policy behind it.

■ The informant-law enforcement relationship is typically based on a particular trust and understanding that the informant's identity will be strictly protected. Absent extreme precautions, requiring an informant to attend *in camera* proceedings could well lead to the disclosure of his or her identity, particularly in cases involving groups of individuals with networks of associates and resources at their disposal. Moreover, even if a clandestine proceeding in a pristine environment could be arranged, many informants who are unfamiliar with judicial proceedings and the

role of the courts could still perceive a risk. Informants could well be discouraged from revealing important information to law enforcement personnel by the mere prospect of being compelled to appear before the Court, even *in camera*. Given the risk of compromising an informant's identity in ordering his or her presence, even *in camera*, the substantial risk to the informant's personal safety in many cases should his or her identity be suspected,[7] and the very real risk that such orders will deter potential informants from providing critical information to law enforcement, a movant should make a showing that at least approximates that required for disclosure.

■ The testimony in *Wilson* regarding the fabrication of affidavits years ago by other officers unrelated to this case is not probative of the veracity of the affiant in this case. There is no evidence that he ever falsified an affidavit and, thus, there is no reason to question his veracity. *See McCray*, 386 U.S. at 313, 87 S.Ct. at 1063. Gaines' unsupported allegations do not entitle him to a hearing, *in camera* or otherwise. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). Whether to require *in camera* proceedings with a confidential informant is within the trial court's discretion. *See, e.g., United States v. Kerris*, 748 F.2d 610, 613–14 (11th Cir.1984); *U.S. v. Kim*, 577 F.2d 473, 478–479 (9th Cir.1978). In this case, defendants' request for *in camera* production of the informant was properly denied. To rule otherwise would open the door to the production of informants, including mere tipsters, in every case where a defendant contradicts the information in the affidavit and then speculates that therefore there may be no informant.

Finally, defendants contend that "the Court erred in denying defendants the opportunity to present witnesses on the Motion to Suppress Evidence." This is simply not so. The only witness the Court ruled defendants could not call was Officer

---

7. Evidence adduced at hearings on motions for reconsideration of bail and suppression of evidence in this case indicates that Gaines and other defendants were associated with a criminal group with a reputation for violence and that one of the defendants was then under indictment for two murders.

Snead, after they would not submit an offer of proof when one was requested by the government.

 A trial court may properly preclude a defendant from presenting testimony where there is no offer of proof to establish that it would be relevant. *See United States v. Lee,* 532 F.2d 911, 915 (3d Cir.1976), *cert. denied,* 429 U.S. 838, 97 S.Ct. 109, 50 L.Ed.2d 105 (1976). *See also United States v. Panza,* 612 F.2d 432, 440 (9th Cir.1980), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980). The Court required defendants, at the government's request, to give an offer of proof as to Snead's testimony. They could not. They indicated that they wanted to ask Snead about: the existence, identity and history of the informant (defendant Gaines had served Snead with a subpoena asking for the production of the informant's file and photograph); potential inconsistencies between his preliminary hearing testimony and Avato's suppression hearing testimony about the execution of the warrant; and, whether there was federal involvement in the police investigation of this case prior to the execution of the warrant. If so, they hoped for a ruling that this was a "federal" warrant which the City bail commissioner lacked authority to issue, a question expressly left open by the Third Circuit. *See U.S. v. Martinez-Zayas,* 857 F.2d 122, 136 (3d Cir.1988).

The Court gave defendants an opportunity during a recess to interview Snead to obtain a proffer from him on these points.[8] Upon returning to the courtroom, defense counsel informed the Court that they declined to obtain a proffer from Snead because he chose to speak with them only in the presence of counsel for the government. Accordingly, where the defendants could not indicate that the witness would

present any relevant testimony and where it appeared that he was called simply to conduct a fishing expedition, his testimony was properly excluded. To rule otherwise would invite defense counsel to call an array of prospective prosecution witnesses when presenting pre-trial motions to conduct fishing expeditions.

 Moreover, there was no prejudice to the defendants. Officer Avato, the person in charge of the state investigation, and DEA Special Agent Willie Haynes, the person in charge of the federal case, testified that there was no federal involvement in this matter before the search and that federal authorities only learned of this matter after defendants were arrested. Further, even if there had been federal involvement and even if the bail commissioner lacked authority to issue the warrant, there was no proffer or showing made that would have entitled the defendants to suppress the evidence seized. *See U.S. v. Martinez-Zayas, supra.* Finally, even with no showing of federal involvement, the court applied the knock and announce requirements embodied in 18 U.S.C. § 3109 to the execution of the warrant. *See U.S. v. Valenzuela,* 596 F.2d 824, 830 (9th Cir.1979), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979); *U.S. v. Gable,* 276 F.Supp. 555, 557 (E.D.Pa.1967), *aff'd,* 401 F.2d 765 (3d Cir.1968). *See also U.S. v. Shaffer,* 520 F.2d 1369, 1372 (3d Cir.1975).

The court admitted and accepted as true Snead's relevant preliminary hearing testimony regarding execution of the warrant, including the portions defendants argued were inconsistent with Avato's testimony at the suppression hearing.[9] The court still found that sufficient exigent circumstances had been shown to excuse strict compliance with section 3109.

---

**8.** The Court indicated that it would entertain a proffer regarding the existence of the informant, but would not require his or her identity to be compromised.

**9.** Whether Snead obtained entry to the outer apartment building door with a key or when another tenant opened it to leave was irrelevant, and thus calling him to contradict Avato on this point was also an impermissible attempt at col-

lateral impeachment. *See U.S. v. McGrane,* 746 F.2d 632, 634 (8th Cir.1984); *U.S. v. Penco,* 612 F.2d 19, 24 (2d Cir.1979); and, *U.S. v. Somers,* 496 F.2d 723, 735 n. 22 (3d Cir.1974), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 57, 42 L.Ed.2d 58 (1974); *U.S. v. Hendrickson,* 417 F.2d 225, 228 (3d Cir.1969), *cert. denied,* 397 U.S. 1026, 90 S.Ct. 1271, 25 L.Ed.2d 537 (1970).

Finally, after the court's ruling on disclosure of the informant, the defendants would not have been able to elicit testimony from Snead that exposed him or her. Putting aside the failure to make a proffer, there is absolutely no basis to believe that Snead would testify that he had falsified his affidavit and that he had no informant.

### B. Denial of Defendants' Motions to Suppress

██ Defendants assert that the Court erred in denying their Motions to Suppress evidence including the cocaine and packaging paraphernalia.[10] The first argument, presented by defendants Gaines, Harris and Mason, was that the warrant was issued without probable cause. The affidavit in support of the warrant provided more than ample probable cause to search Gaines' apartment.

The affidavit indicated that two days prior to the search a confidential informant told police that several times over the preceding month he or she had personally observed Gaines and several unknown black males in possession of large quantities of cocaine and "caps," a street name for crack, inside Gaines' apartment. The informant observed these men cutting and packaging the cocaine for sale, and stated that the apartment was a "stash house" in which narcotics were stored and packaged. The informant also saw large sums of money, handguns and a shotgun in the apartment.

This information, based on the personal observations of an informant who had supplied reliable information in the past, provided a substantial basis for concluding that probable cause existed for the issuance of the warrant. *Illinois v. Gates*, 462 U.S. at 227–239, 103 S.Ct. at 2326–2333.

██ All defendants except McNeil contended that the evidence should have been suppressed because in executing the search warrant, the officers failed to comply with 18 U.S.C. § 3109. This statute requires an officer executing a search warrant to announce his authority and purpose and, if refused admittance, permits him forcibly to enter the premises.

The record shows that the officers announced their identity but is contradictory as to whether they said they had a warrant. The Court ruled that in either event they did not comply with section 3109 because they forced the door open five seconds after knocking when they had not yet been denied admittance.

Compliance with section 3109 is excused, however, when the officer has a reasonable belief that it might endanger him or his associates. *United States v. Kane*, 637 F.2d 974, 978 (3d Cir.1981). The Court held that:

> "where the inhabitants were engaged in the production and sale of large quantities of illegal drugs ... it reasonably could have been deduced [that] the weapons were necessary as protection. It is possible that a substantial arms supply unexplained by legitimate purposes would itself have established reasonable grounds for the officers [unannounced entry]. *In the context of large-scale drug activities*, we hold the standard was met."

*Id.* at 980. (emphasis added). Likewise, in the instant case, the occupants of the premises were reasonably believed to be armed and conducting a large-scale drug operation.

Officer Avato testified that the safety of his search team was a major concern. They had reliable information that there were handguns and a shotgun inside the apartment, and had knowledge of the occupant's association with an organization with a reputation for violence.[11] Under

---

10. At the suppression hearing, the government conceded standing as to all six defendants, alleviating them of their burden on this point. *See Rawlings v. Kentucky*, 448 U.S. 98, 104–5, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978).

11. Avato's grand jury and suppression hearing testimony show that he was aware from police sources and media reports that the group was violent and homicidal. (An August 13, 1989 WPVI–TV News feature corroborates the significant involvement of the Junior Black Mafia in

these circumstances, the officers had a reasonable fear for their safety, and the failure to comply strictly with section 3109 was justified.

### C. Evidentiary Rulings

Defendants contend that it was error to admit evidence of telephone calls from narcotics buyers. Pickard and McNeil contend that excluding evidence that one caller asked for "Dallas" and "Tracey" was erroneous and that they should have been granted a severance at that juncture.

■ Avato testified that during the search the police answered several telephone calls from persons indicating that they were expecting deliveries at various street locations from persons at the apartment. One stated that he was expecting "200 bags" to be delivered. Defendants objected to this testimony as hearsay.

This testimony was not hearsay because it was not introduced to prove the truth of the matter asserted but to show that the apartment and its occupants were a known source of drugs. It was probative to show the existence and nature of the conspiracy. The fact that the callers were willing to give their locations and speak with anyone who answered was evidence that anyone present likely was involved in the conspiracy. The truth of statements by the callers was not at issue. Their relevance lies in the mere fact that they were made.

For example, in *United States v. Wilson*, 532 F.2d 641 (8th Cir.1976), *cert. denied*, 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976), the Court upheld the admission into evidence of two notebooks found in the defendant's apartment which appeared to document various narcotics transactions. The Court recognized that whether the transactions actually occurred need not be shown as the truth of the statements was not at issue. *Id.* at 645. The statements were relevant to show that the defendant's apartment was used for drug trafficking and thus did not constitute hearsay. *Id.* at 645–46. *See also, United States v. Giraldo*, 822 F.2d 205 (2d Cir.1987) (telephone the City's drug trade and drug-related homi-

messages of customers placing coded orders for cocaine were not hearsay and were admissible to show cocaine possessed by defendant was for purposes of distribution), *cert. denied*, 484 U.S. 969, 108 S.Ct. 466, 98 L.Ed.2d 405 (1987); *United States v. Southard*, 700 F.2d 1, 13 (1st Cir.1983) (conversations of placing of bets constituted verbal acts that were evidence of defendants' operation of gambling business and were not admitted for truth of matter asserted and, thus, were not hearsay), *cert. denied*, 464 U.S. 823, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *United States v. Zenni*, 492 F.Supp. 464, 469 (E.D.Ky.1980) (telephone calls during search in which callers placed bets admissible to show they believed premises used as betting operation and were not hearsay).

■ The Court excluded testimony that one caller asked for "Dallas" and "Tracey" before talking to the unidentified police officer who answered. This testimony would be confusing and leave the jury to speculate as to which, if any, of the two Traceys the caller referred. The real probative value of the testimony was that the caller was willing to convey his message about waiting for a delivery of "200 bags" to whomever was at the apartment. Moreover, Pickard and McNeil established during cross-examination that none of the callers asked for them. A severance should be granted only when a defendant clearly establishes that he will be severely prejudiced by a joint trial. *United States v. Stout*, 499 F.Supp. 605, 606 (E.D.Pa.1980). Under these circumstances, defendants Pickard and McNeil suffered no prejudice and their motion for a severance was properly denied.

### D. Prosecutorial Misconduct

Defendants argue that each of four acts of prosecutorial misconduct required the grant of a mistrial.

They first contend that it was misconduct for the prosecutor to ask a police witness whether any of the telephone callers asked for "a defendant" and when the cides.)

witness responded in the negative, to ask whether the caller requested to speak with "another defendant." In fact, no such questions were asked. After the Court ruled that the testimony regarding the telephone calls could be admitted without reference to the two first names mentioned by one caller, the prosecutor asked the witness to "tell the jury what the caller said to you, and what you said to the caller." The witness responded that the caller asked for "a defendant." There was no objection. The witness continued that he said there was no one there by that name and the caller then asked if "another one of the defendants" was there. Again, there was no objection. The witness then began describing other calls in which the callers had not asked for anyone in particular. The prosecutor asked whether any of these callers had asked for Gaines, at which point the Court sustained a defense objection. Only then, at sidebar, did defense counsel object to the testimony by Avato that the first caller asked for a defendant and then another defendant.

The Court struck this portion of the testimony and instructed the jury to disregard it. The defendants were not prejudiced. Also, there was no prosecutorial misconduct evidenced by this testimony. The prosecutor did not elicit it. The witness volunteered it.

█ Next, defendants contend that the prosecutor committed misconduct by stating that the reason defense counsel would not offer a document into evidence was that it had "too much stuff in it that they don't want." While this statement may have been ill-advised, it did not mandate a mistrial and does not require a new trial.

█ Improprieties in a prosecutor's remarks warrant a new trial only if they are so gross that there is a probability of prejudice to the defendants and such prejudice was not neutralized by the court. *Munford,* 431 F.Supp. at 290. Any harm from prosecutorial misconduct must affect "a substantial right of the defendants and the prejudice must be balanced against the evi-

dence of guilt." *Id.* There was no such probability of prejudice here, and the Court instructed the jury that counsel's comments were not evidence and should not be considered as indicative of anything. This admonition was repeated in the court's charge, and the jury was directed not to speculate about any item that for any reason was not placed in evidence. In addition, the evidence of defendants' guilt was substantial. The Court finds that no substantial right of the defendants was prejudiced by the remark. The motion for a mistrial was properly denied and there is no basis for a new trial.[12]

█ Defendants next contend that it was misconduct for the prosecutor to argue that they may not have used the scale found in the bedroom closet to measure the cocaine because they were "so skilled at packing bags of cocaine." This was in rebuttal to a defense contention that the police had fraudulently constructed and photographed the scene to look like a cocaine packaging operation but forgot to include the scale. Under the circumstances, this was permissible rebuttal argument.

█ Finally, defendants sought a mistrial on the basis of the prosecutor's argument that if any defendant were innocent, he would have quickly left the apartment because of the obvious criminal activity occurring there. This was permissible argument. *See U.S. v. Staten, supra,* at 885 n. 67. Moreover, the court instructed the jury that "mere presence" at the scene of a crime was not sufficient to prove guilt.

### E. Asserted Errors in the Charge to the Jury

█ The court denied defendant Pickard's request for a lesser included offense charge of simple possession of cocaine and conspiracy to possess cocaine. The charge was properly refused.

A lesser included offense charge should be given only where the evidence warrants it, *i.e.,* "if the evidence would permit a jury

---

12. The prosecutor's comment would have gone largely unnoticed were it not for defense coun-

sel's animated request for a mistrial in the jury's presence.

rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater." *Hopper v. Evans,* 456 U.S. 605, 611–12, 102 S.Ct. 2049, 2052–53, 72 L.Ed.2d 367 (1982) (quoting *Keeble v. U.S.,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973)). In this case there was no evidence to support a charge of simple possession which also would also permit the jury to acquit the defendant of possession with intent to distribute.

This case involved nearly a kilogram of cocaine worth almost $100,000. This is well in excess of what one would possess for personal consumption. Further, the physical evidence strongly indicated that the cocaine was being packaged for street distribution. Finally, there was no evidence from which the jury reasonably could have concluded that Pickard merely possessed a small portion of this cocaine. He was charged with joint constructive possession and the jury could only conclude that he possessed all of it or none of it. *See United States v. Zapata–Tamallo,* 833 F.2d 25, 28 (2d Cir.1987) (lesser included offense charge properly refused where defendant possessed more than required for personal use); *United States v. Espinosa,* 827 F.2d 604, 615 (9th Cir.1987) (lesser included offense charge properly refused where no evidence to suggest defendant owned only portion of drugs), *cert. denied,* 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988); *United States v. Payne,* 805 F.2d 1062, 1067 (D.C.Cir.1986) (lesser included offense charge should not be given where defense is entirely exculpatory); *United States v. Johnson,* 734 F.2d 503, 506 (10th Cir.1984) (defendant not entitled to lesser included offense charge of possession when he possessed 26 grams of cocaine worth over $13,000, and drug dealing paraphernalia).

Finally, defendants assert as error this Court's "fail[ure] to charge the jury pursuant to various [r]equests for [c]harge submitted on behalf of [d]efendants." [13] This claim also is without merit.

Rule 30 of the Federal Rules of Criminal procedure mandates that "[n]o party may

assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires, ... stating distinctly the matter to which that party objects and the grounds of the objection." A defendant who fails to bring specific objections to the Court's attention prior to jury deliberation waives any right to assert error in the charge as given, absent plain error affecting a substantial right. *United States v. Wilkins,* 422 F.Supp. 1371, 1379 (E.D.Pa.1976), *aff'd,* 547 F.2d 1164 (3d Cir.1976), *cert. denied,* 444 U.S. 877, 100 S.Ct. 163, 62 L.Ed.2d 106 (1979).

Other than Pickard's objection to the refusal of a lesser included offense charge, the defendants did not make or preserve a single objection to the jury instructions. The Court finds nothing in the charge which constitutes plain error. The mere submission of a proposed charge does not preserve the failure to give it as an issue for review. *United States v. Jackson,* 569 F.2d 1003, 1009 (7th Cir.1978), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978). Defendants must make distinct objections. *Id.* Defendants' boilerplate post-trial objection, even had it been raised at trial, would not be sufficient under Fed.R. Crim.P. 30. Defendants' motion for a new trial on this ground will be denied.

---

13. Only Gaines, McNeil and Pickard submitted any proposed jury instructions.