**UNITED STATES of America**

v.

**KANE, Daniel Joseph, Appellant.**

**No. 80-1411.**

United States Court of Appeals, Third Circuit.

Argued Oct. 9, 1980.

Decided Jan. 14, 1981.

Rehearing Denied March 10, 1981.

---

Stanley M. Shingles (argued), Philadelphia, Pa., for appellant.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Div., Philadelphia, Pa., Gregory P. Miller, Asst. U. S. Atty. (argued), Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, HIGGINBOTHAM, Circuit Judge, and MEANOR, District Judge.*

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

When a federal officer executes a search warrant of a house, Section 3109 of Title 18 of the Federal Code generally requires that he give "notice of his authority and purpose" and be "refused admittance" before he may "break" into the premises. In this appeal we must determine whether the officer must comply with the announcement requirements of Section 3109 when he reasonably believes that he would be placed in unwarranted physical danger if he made such an announcement. Because we hold, as at least five other circuits have before us, that he need not comply in these circumstances, and that the facts of this case fall within this exception, we will uphold the seizure of evidence challenged in this appeal and uphold appellant's conditional plea of guilty.

### I.

In early 1977, agents of the Drug Enforcement Administration of the Department of Justice (DEA) learned from their New York office that an individual named Zelman Fairorth had ordered Phenyl Z Acetone from a chemical company. Phenyl Z Acetone is an essential precursor used in the production of methamphetamine, a schedule II controlled non-narcotic sub-

---

* Honorable H. Curtis Meanor, of the United States District Court for the District of New Jersey, sitting by designation.

stance commonly referred to as "speed." Subsequent investigation and information supplied by an informant employee of Fairorth's, Russell A. Weston, indicated that Fairorth was purchasing this and other precursor chemicals and selling them to Daniel Kane. According to the informant, Kane operated with two other individuals a methamphetamine laboratory located in a house rented by Kane at 322 Phillips Mill Road, Solesbury Township, Bucks County, Pennsylvania. Agents reportedly observed Fairorth purchase precursor chemicals and learned from an undercover state trooper that Kane had sold 2.8 grams of methamphetamine to him. On the basis of this information, the agents secured a search warrant for Kane's house on June 8, 1977.

At about 2:15 p. m. on June 9, DEA agents, along with state law enforcement officials, approached Kane's house to execute the search warrant. There were reportedly five people in the house at the time—Weston; Kane; Kane's girlfriend, Melinda Hallock; one John DePaul; and an individual later identified as Fairorth. There were also reportedly four weapons in the house—two rifles, a shotgun and a .38-caliber revolver.[1] Under a prearranged plan, the officers divided into three teams, which were in contact by portable radio. The first team, which was comprised of Agents Frank Wicks and Patricia McCurdy, drove up to the house in an unmarked police car, and Wicks proceeded to the front door. The second team led by Agent Don Miller approached a side basement door. The third team covered the rear kitchen door. Agent Wicks knocked on the front door and explained to the man who answered the door, Fairorth, that he was searching for an individual referred to him by an antique dealer. The opening of the door was the signal for Agent McCurdy, who was sitting in the unmarked car, to instruct the other teams to enter the premises. The second

team forced its way through the basement door and proceeded up the basement steps to the kitchen, admitting the third team through the kitchen door. The noise of the other units in the house led Agent Wicks to step through the door, grab Fairorth by the arm, and inform him that Wicks was a federal agent with a search warrant. Thus, at the point when the first officer of the second team entered the house, no officer had yet announced his identity and purpose.

The subsequent search of the house uncovered a methamphetamine laboratory and a quantity of precursor chemicals of methamphetamine. The agents also discovered on the premises a semi-automatic .30-caliber carbine, a Winchester rifle, two 12-gauge shotguns, two .38-caliber revolvers, and ammunition. Fairorth and Kane were charged with conspiracy to manufacture a controlled substance, manufacture of a controlled substance, and possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. §§ 841 and 846. The trial date was set for January 4, 1978, but Kane failed to appear, and a warrant was issued for his arrest. Fairorth was tried separately and convicted on all counts. Kane was apprehended in December of 1979.

On January 14, 1980, the district court considered a motion by Kane to suppress the evidence obtained in the search of the house on the ground that the search warrant was improperly executed. The court denied the motion on January 16. The same day Kane entered a conditional plea of guilty pursuant to our decision in *United States v. Zudick*, 523 F.2d 848, 851 (3d Cir. 1975), in order to challenge on appeal the decision of the district court judge not to suppress the evidence obtained in the search. On March 11, 1980, Kane was sentenced to concurrent four-year terms of imprisonment for the three counts of the in-

---

**1.** The testimony at the suppression hearing does not specifically establish the ultimate source of this information, though it is probable that it was the informant Weston. Agent Wicks testified at the hearing that immediately before the search, he learned from Agent Miller of a telephone call Miller had received from

Weston describing the production of methamphetamine in the house. According to Wicks, Miller also told him in that conversation about the number of people and weapons in the house. Transcript of January 14, 1980 Hearing, pp. 5–9.

dictment, to be followed by a two-year special parole. He filed an appeal on March 21, 1980.

Kane argues before this court that the June 9th search violated 18 U.S.C. § 3109 because the agents failed to announce their authority and purpose before entering the premises. The government concedes, as it must, that Section 3109 applies to the search and that the announcement requirement of the statute was not met. It claims that this case comes within an exception to the announcement requirement of Section 3109 when the officer reasonably believes notice would place him in peril. Thus, we must evaluate whether there is such an exception under the statute; and if there is, whether the facts of this case fall within it. We will consider these contentions seriatim.

## II.

Section 3109, Title 18 provides as follows: The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Although the permissive language of Section 3109 does not specifically prohibit the entrance of police officers who have not complied with the notice provisions of the section, the section has been interpreted to exclude evidence obtained in a search where officers had not complied with these provisions. *Miller v. United States*, 357 U.S. 301, 306, 78 S.Ct. 1190, 1194, 2 L.Ed.2d 1332 (1958). The section has also been held to apply to arrests. *Id.* Thus, officers may "break" into a dwelling pursuant to a search warrant or arrest only after they have announced their authority and purpose, and have been "refused admittance," see *United States v. Murrie*, 534 F.2d 695, 698 (6th Cir. 1976), unless their entrance comes within one of the judicially evolved exceptions to the above provisions.

The statute embodies elements of the common law and protections of the fourth amendment prohibition against unreasonable search and seizures. It has been held to further three goals. *See generally Miller v. United States*. First, it "reduces the potential for violence to both the police officers and the occupants of the house," *United States v. Bustamante-Gamez*, 488 F.2d 4, 9 (9th Cir. 1973), *cert. denied*, 416 U.S. 970, 94 S.Ct. 1993, 40 L.Ed.2d 559 (1974), by preventing police officers from being "mistaken, upon an unannounced intrusion into a home, for someone with no right to be there." *Sabbath v. United States*, 391 U.S. 585, 589, 88 S.Ct. 1755, 1758, 20 L.Ed.2d 828 (1968). *See Miller v. United States*, 357 U.S. at 313, 78 S.Ct. at 1197; *McDonald v. United States*, 335 U.S. 451, 460–61, 69 S.Ct. 191, 195, 93 L.Ed. 153 (1948). Second, it prevents damage to private property that may be needlessly destroyed in a forced entry. *See United States v. Bustamante-Gamez*, 488 F.2d at 9.

Finally, it symbolizes respect for "the individual's right of privacy in his house." *Miller v. United States*, 357 U.S. at 313, 78 S.Ct. at 1197. The Supreme Court has recently recognized, in scrutinizing a warrantless intrusion, that in no case is "the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home ..." *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980). *See also United States v. Velasquez*, 626 F.2d 314, 317 (3d Cir. 1980). While intrusions in cases that come within Section 3109 are legal because of the search warrant, the announcement of that intrusion symbolizes respect for the sanctity of the home, and more practically, offers a brief opportunity for the individual to order his personal affairs before the police enter. *Miller v. United States*, 357 U.S. at 313, 78 S.Ct. at 1197.

The practicalities and exigencies of police administration, however, have led the courts to recognize exceptions to the announcement requirement. The statute itself provides that no announcement need be given "when necessary to liberate [the officer] or person aiding him in the execution

of the warrant." Three other exceptions were raised in a dissenting opinion of Justice Brennan in *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), and commented on approvingly by the Supreme Court in *Sabbath v. United States,* 391 U.S. 585, 591 n.8, 88 S.Ct. 1755, 1759 n.8, 20 L.Ed.2d 828 (1968). These exceptions include:

> (1) Where the persons within already know of the officers' authority, and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door) are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted.

347 U.S. at 47, 83 S.Ct. at 1639 (Brennan, J., dissenting).[2]

Thus, this and other circuit courts have recognized exceptions where announcement created a significant possibility of the destruction of evidence before entrance of the police officials;[3] when the individuals inside knew of the officers identity and purpose, thereby making an announcement a "useless gesture;"[4] or when announcement might lead to an escape by an individual being sought by the police.[5]

■ We hold that a police officer's reasonable belief that announcement might place him or his associates in physical peril constitutes another "exigent circumstance," *Miller v. United States,* 357 U.S. at 309, 78 S.Ct. at 1196, that justifies non-compliance with the announcement provisions of the statute. The plurality opinion of the Supreme Court in *Ker v. California,* 374 U.S. at 39–40, 83 S.Ct. at 1632, interpreted a comparable California statute to allow such an exception because the exception was grounded in the common law,[6] and the five circuits which have considered this issue have all found an exception for peril to officers.[7] The purpose of Section 3109 in safeguarding the well-being of the inhabit-

2. In his dissent, Justice Brennan considered these exceptions as exclusive. The majority in *Sabbath* made no such limitation.

3. *See, e. g., United States v. Fluker,* 543 F.2d 709, 717 (9th Cir. 1976); *United States v. Davis,* 461 F.2d 1026, 1034 (3d Cir. 1972); *United States v. Singleton,* 439 F.2d 381, 385–86 (3d Cir. 1971).

4. *See, e. g., United States v. Seelig,* 498 F.2d 109, 113–14 (5th Cir. 1974); *United States v. Singleton,* 439 F.2d 381, 385–86 (3d Cir. 1971).

5. *See, e. g., United States v. Davis,* 461 F.2d at 1034; *United States v. Manning,* 448 F.2d 992, 1001–02 (2d Cir.) (in banc), *cert. denied,* 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971). In this case, the government makes no claim that the intrusion falls within any of these exceptions.

6. In *Sabbath v. United States,* the Supreme Court held that it did not have to decide whether exigent circumstances would justify non-compliance with the statute because there was no reason to believe announcement would have placed the police in any danger. 391 U.S. at 591, 88 S.Ct. at 1759.

7. *See United States v. Fluker,* 543 F.2d 709, 717 (9th Cir. 1976); *United States v. Scott,* 520 F.2d 697, 700–01 (9th Cir.), *cert. denied,* 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645 (1976); *Ro-*

*driguez v. Jones,* 473 F.2d 599, 607 (5th Cir.), *cert. denied,* 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973) (interpreting a parallel Texas statute under the federal standard of Section 3109); *United States v. Pratter,* 465 F.2d 227, 230–31 (7th Cir. 1972); *United States v. McShane,* 462 F.2d 5, 6 (9th Cir. 1972); *United States v. Smith,* 456 F.2d 1236 (9th Cir. 1972), *cert. denied,* 410 U.S. 912, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973); *United States v. Garcia Mendez,* 437 F.2d 85, 86 (5th Cir. 1971) (per curiam); *United States v. Harris,* 435 F.2d 74, 83 (D.C.Cir.1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971); *Gilbert v. United States,* 366 F.2d 923, 932 (9th Cir. 1966), *cert. denied,* 388 U.S. 922, 87 S.Ct. 2123, 18 L.Ed.2d 1370 (1967); *Jackson v. United States,* 354 F.2d 980, 982 (1st Cir. 1965) (interpreting a Massachusetts statute under *Ker* and *Miller*). *Cf. United States v. Montano,* 613 F.2d 147, 153–54, 156–57 (6th Cir. 1980) (concurring and dissenting judges reaching question and holding there is exception). *See also* Restatement, Second, Torts § 206, Comment (d). *Contra United States v. Sims,* 231 F.Supp. 251 (D.Md. 1964). This exception has been spoken of approvingly by at least one commentator, *see* Blakely, *The Rule of Announcement and Unlawful Entry, Miller v. United States* and *Ker v. California,* 112 U.Pa.L.Rev. 499, 543, 548 (1964).

ants and the police is furthered by permitting the police in certain circumstances not to announce their identity and purpose. While some may argue that the failure to announce in *particular* cases would place inhabitants and officers in danger, it seems evident that many cases exist where the well-being of police officers as well as inhabitants would be threatened by an absolute prohibition on unannounced intrusions. Clearly "experience has shown that either course can precipitate injury or death." *United States v. Cognato*, 408 F.Supp. 1000, 1004–5 (D.Conn.1976) (Newman, J.), *aff'd*, 539 F.2d 703, *cert. denied*, 430 U.S. 956, 97 S.Ct. 1603, 51 L.Ed.2d 806 (1977). In these circumstances, discretion must be given to "a professional [who is] trained ... to perform his mission" but limited by "the statutory amendment to show a decent respect for the privacy of the citizen before bursting into his house." *United States v. Pratter*, 465 F.2d 227, 231 (7th Cir. 1972).

Of course, unannounced intrusions do not further the other goals of the statute—respect for the privacy of the inhabitants and the protection of personal property. The adoption by this and other circuits of an exception for destruction of evidence and flight from arrest, however, reflects a willingness to subordinate these interests to safety concerns when the needs of police enforcement clearly demand it. Surely if the destruction of evidence and peril to individuals *inside* the dwelling justify noncompliance, *see Ker v. California*, 391 U.S. at 47, 83 S.Ct. at 1636, so, we conclude, should peril to the officers entering the house. This is particularly true when it is remembered that any privacy interest of the inhabitants is at best temporary when the police possess a valid search warrant. Thus, we hold that federal agents who possess a valid search warrant need not announce their identity and purpose under Section 3109 if they reasonably believe such an announcement would place them in unwarranted peril.

**III.**

We still must consider whether the police officers in this case had reasonable grounds for such belief. The reasonableness of their belief must be evaluated, of course, according to the facts "as the officers had reason to believe [them to be] *at the time of their entry.*" *Ker v. California*, 374 U.S. at 40 n.12, 83 S.Ct. at 1633 n.12 (emphasis in original). *Accord, United States v. Davis*, 461 F.2d at 1034. The defendant has the burden of establishing a prima facie violation of the statute. *See United States v. Gardner*, 553 F.2d 946, 949 (5th Cir. 1977), *cert. denied*, 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 753 (1978). Once this minimal burden has been met, however, as it has in this case, we conclude that "the burden of proof of exigent circumstances to justify such a deviation from the Fourth Amendment is upon those who are seeking advantage of the exception," *United States v. Murrie*, 534 F.2d at 698—that is, the government. *Accord, United States v. Gardner*, 553 F.2d at 949. While the application of this standard to the facts of this case is not free from doubt, we conclude that the officers did possess reasonable grounds to believe that an announcement would place them in unwarranted peril.[8]

The prior cases in this area have arisen in a variety of subtly different factual contexts from which generalizations are hazardous. Nevertheless, the courts have generally found reasonable grounds for an exception when the inhabitants, as in this case, possessed weapons and there was some indication of a propensity to use those weapons. In *United States v. Garcia Mendez*, 437 F.2d 85, 86 (5th Cir. 1971) (per curiam), for example, the court found grounds for a reasonable belief because an officer observed a weapon lying next to the bed where the suspect was sleeping. Similarly, the fact that the inhabitants were likely "armed or of a violent nature" was also held to excuse a failure to announce in *United States v. Smith*, 456 F.2d 1236 (9th

**8.** The government does not claim that the second unit broke into the house before Agent Wicks entered the dwelling through the open door. Therefore no argument can be made that the intrusion was secured through consent or ruse.

Cir. 1972). In other cases, the courts have found exceptions because the inhabitant was armed and had used a weapon in prior criminal activity. *See United States v. Scott*, 520 F.2d 697, 700–701 (9th Cir. 1975) (armed and alleged to have committed an armed robbery); *Rodriguez v. Jones*, 473 F.2d 599, 606–607 (5th Cir. 1973) (armed and alleged to have murdered three deputy sheriffs); *United States v. McShane*, 462 F.2d 5, 6 (9th Cir. 1972) (armed and previously convicted of shooting at an officer); *United States v. Harris*, 435 F.2d 74, 81–82 (D.C.Cir.1970) (alleged to have shot employee during robbery); *Gilbert v. United States*, 366 F.2d 923, 927 (9th Cir. 1966) (armed and alleged to have killed a police officer).

In the present case, when the officers approached Kane's house, they had learned that there were three men and a woman inside (in addition to the informant), and that the inhabitants had available to them in the house two rifles, a shotgun, and a revolver.[9] There was also overwhelming evidence that the inhabitants were engaged in the production and sale of large quantities of illegal drugs, for which, it reasonably could have been deduced, the weapons were necessary as protection. It is possible that a substantial arms supply unexplained by legitimate purposes would itself have established reasonable grounds for the officers actions in this case. In the context of large scale drug activities, we hold that the standard was met.

This case is distinguishable from those instances where the courts have refused to sanction an intrusion under this exception. In *Sabbath v. United States*, 391 U.S. at 591, 88 S.Ct. at 1759, for example, the Supreme Court found there was no peril when "[t]he agent had *no* basis for assuming [the inhabitant] was armed or might resist arrest." (Emphasis added). *See also United States v. Pratter*, 465 F.2d 227, 231 (7th Cir. 1972) (exception not met where there were "no special risks within the apparently

peaceful home of a student couple.") The courts have similarly refused to find an exception based on the "mere presence of drugs" on the premises, *United States v. Doering*, 384 F.Supp. 1307, 1310–11 (W.D. Mich.1974), or the fact that an individual suspected of being on the premises owned a licensed weapon which he may not have even been carrying. *United States v. Fluker*, 543 F.2d 709, 717 (9th Cir. 1976). *See also United States v. Barrow*, 212 F.Supp. 837, 846 (E.D.Pa.1962) (exception not met by unconfirmed information that there "might" be an individual on the premises who owned a gun). In this case, the inhabitants possessed an arsenal of weapons which the police quite reasonably could have concluded was used in illegal drug activities. Thus, we find that their method of intrusion did not violate the provisions of Section 3109.

## IV.

For the reasons discussed above, we will affirm the decision of the district court not to suppress the evidence seized in the raid and therefore uphold the guilty plea conditionally entered by the appellant.

---

**9.** The record does not reflect whether the inhabitants had licenses for any of these weapons.