**UNITED STATES of America, Appellant,**

v.

**Steven Lester MARTS; Pamela Sue Marts, Appellees.**

**No. 92–1803.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1992.

Decided Feb. 26, 1993.

Rehearing and Rehearing En Banc Denied May 17, 1993.

Ronald M. Kayser, Asst. U.S. Atty., Des Moines, IA, argued, for appellant.

William C. Bracker, Des Moines, IA, argued (Jon B. Schuster, Des Moines, IA, on the brief), for appellees.

Before FAGG, Circuit Judge, LAY, Senior Circuit Judge, and LARSON,* Senior District Judge.

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

EARL R. LARSON, Senior District Judge.

The government appeals from the district court's [1] decision granting Steven Lester Marts' and Pamela Sue Marts' motion to suppress evidence seized during a search of the Marts residence, pursuant to a search warrant. We affirm.

## I.

The Drug Enforcement Agency obtained a search warrant authorizing it to search the rural trailer home of Steven Lester Marts and Pamela Sue Marts. The affidavit supporting the search warrant detailed the alleged methamphetamine trafficking activities of Steven Marts, among others. Most of the items sought in the search were various records, as well as firearms and ammunition; drugs were not sought under the terms of the search warrant.

On January 12, 1991, at approximately 7:30 a.m., the search warrant was executed by a team of eight to ten federal and state law enforcement officers, led by Special Agent Franson. The officers parked thirty to forty feet from the trailer and ran up to the front door of the trailer. Franson knocked on the door quickly two or three times and announced, "Police officers— search warrant." He waited less than five seconds, opened the unlocked door, and entered. The officers found Steven Marts sitting in the living room recliner (presumably asleep), and saw Pamela Marts coming toward the door from the bedroom or bathroom at the rear of the trailer. The district court made findings that Franson neither heard nor saw anything from inside the trailer, and that the team had no information indicating that either Marts was considered dangerous or violent, or might be inclined to use firearms against them. The team was aware that, nine months prior to the search, a confidential informant had observed numerous firearms in the residence during drug transaction activity. The district court also stated that Franson did not consider making an unannounced entry because he did not believe that the information regarding weapons, standing alone, justified such an entry. Franson, nevertheless, felt an urgency to enter quickly because of that very information.

The district court concluded that the entry into the Marts residence violated 18 U.S.C. § 3109 and that all evidence seized in the search should be suppressed. The government presents a three pronged challenge to this ruling, arguing that: 1) exigent circumstances justified the officers' hasty entry, 2) the officers acted in good faith, and 3) suppression of the evidence unjustly excludes probative and reliable evidence. We review the district court's ruling to determine whether the court was clearly erroneous in its determinations. *United States v. Keene*, 915 F.2d 1164, 1167 (8th Cir.1990).

## II.

Title 18 U.S.C. § 3109 provides:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Commonly referred to as the "knock and announce" rule, this statute safeguards Fourth Amendment rights, protecting citizens from violations through the misconduct of police officers.

We first note that the officers were not "refused admittance" to the Marts residence, within the meaning of the statute.[2] We firmly agree with the lower court's statement that, "The Martses were not al-

---

1. The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

2. In cases where the courts have allowed short time lapses in upholding a knock and announce search, exigent circumstances have also been found. *See United States v. Streeter*, 907 F.2d 781 (8th Cir.1990); *United States v. Ruminer*, 786 F.2d 381 (10th Cir.1986); *United States v. Wysong*, 528 F.2d 345 (9th Cir.1976); *United States v. Gaines*, 726 F.Supp. 1457 (E.D.Pa. 1989); *United States v. Rodriguez*, 663 F.Supp. 585 (D.C.Cir.1987).

lowed adequate time to grant admittance to the officers, and there simply is no evidence to support a finding that they, by some conduct, refused the officers admittance. One cannot fairly infer a refusal *merely* from the lapse of less than five seconds...." Rulings on Motions to Suppress Evidence and Motion for Severance at 3.

■ It is true that exigent circumstances may excuse an otherwise improper entry under § 3109. *See Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *United States v. Streeter*, 907 F.2d 781 (8th Cir.1990); *United States v. Nabors*, 901 F.2d 1351 (6th Cir.1990). The government primarily relies upon such circumstances to excuse the officers' conduct in this instance, contending that the information regarding firearms was sufficient to justify the hasty entry. In *Nabors, supra*, the Sixth Circuit wisely stated:

> We do not hold ... that every time law enforcement personnel suspect that the subject of a search warrant possesses a firearm, a split-second announcement followed by a forced entry sufficiently complies with 18 U.S.C. § 3109.... We note that law enforcement officers may not take lightly the requirement of § 3109 that bursting into apartments is permitted only "after notice of [the officers'] authority and purpose [and they are] refused admittance...." 18 U.S.C. § 3109. Cases in which officers make a forced entry seconds after announcing their authority and purpose will be carefully scrutinized in the future to determine whether there is compliance with the requirements of § 3109.

*United States v. Nabors*, 901 F.2d at 1354–55. The district court carefully scrutinized the factual circumstances in this case and concluded that the officers, by entering less than five seconds after knocking and announcing, violated § 3109. No exigent circumstances sufficient to excuse the officers' misconduct were present. The reasonable belief that firearms may have been within the residence, standing alone, is clearly insufficient.

This court is surely cognizant of the balancing act which law enforcement officers must undertake in the performance of their duties. In fighting the "war on drugs," officers have every reason to be fearful of hostility and even gunfire. However, a ruling which excuses actions which would otherwise constitute clear misconduct, based upon the subjective fears and beliefs of officers, would emasculate the rule, reducing it to nothing more than a "knock and enter" rule. *See also United States v. Moore*, 956 F.2d 843, 850 (8th Cir.1992).

## III.

■ The remedy for the violation of § 3109 is generally the suppression of the illegally obtained evidence. *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *United States v. Miller*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958); *United States v. Nabors*, 901 F.2d 1351 (6th Cir.1990). The government advances two arguments in support of its contention that the exclusionary rule should not apply to the evidence seized at the Marts residence.

First the government argues that, because the officers acted in a mistaken but reasonable belief that their conduct was lawful, the purposes of the exclusionary rule in deterring unlawful police conduct are not furthered. In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court did announce a good faith exception to searches conducted pursuant to warrants, discussing at length the deterrent purposes of the exclusionary rule. Quoting the Court in *United States v. Peltier*, 422 U.S. 531, 542, 95 S.Ct. 2313, 2320, 45 L.Ed.2d 374 (1975), the Court stated:

> "If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment."

*United States v. Leon*, 468 U.S. at 919, 104 S.Ct. at 3419. The Court continued:

In short, where the officer's conduct is objectively reasonable, "excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty." *Stone v. Powell*, 428 U.S. [465], at 539–540 [96 S.Ct. 3037, 3073–3074, 49 L.Ed.2d 1067 (1976)] (WHITE, J., dissenting).

*United States v. Leon*, 468 U.S. at 919–920, 104 S.Ct. at 3419. However, the Court also specifically noted:

We emphasize that the standard of reasonableness we adopt is an *objective one*. Many objections to a good-faith exception assume that the exception will turn on the subjective *good faith of individual* officers. "Grounding the modification in objective reasonableness, however, retains the value of the exclusionary rule as an incentive for the law enforcement profession as a whole to conduct themselves in accord with the Fourth Amendment." * * * The objective standard we adopt, moreover, requires officers to have a reasonable knowledge of what the law prohibits.

*United States v. Leon*, 468 U.S. at 919 n. 20, 104 S.Ct. at 3419 n. 20 (citations omitted) (emphasis provided). The government's reliance upon *Leon* in the instant case is misplaced. The good faith exception in *Leon* was announced in response to a factual situation where officers were acting in reasonable, good faith reliance upon a search warrant which was ultimately found to be invalid. Thus, the court held that the evidence obtained by the officers should not be excluded. The *Leon* decision does not extend to the instant case, where there is no indication that the officers' conduct was objectively reasonable. Rather, there was a clear violation of the knock and announce rule, without the presence of exigent circumstances. The Fourth Amendment limitations are designed to deter precisely this kind of conduct. The incentive for officers to operate within those limitations in the future is provided by our application of the exclusionary rule.

The government's second basis for arguing that the exclusionary rule should not be applied is that it results in the unreasonable suppression of highly probative and reliable evidence. The government urges that, even if the officers had waited an additional period of time, the exact same search would have been conducted and the exact same evidence would have been seized. Thus, this "technical violation" should not exact the full remedy provided by the law. Longstanding constitutional principles regarding unlawful search and seizure bar the government's use of the fruits of an unlawful search simply because the officers "would have found it anyway."[3] The fact that the evidence is so probative that the government cannot prosecute its case without it is no more persuasive in excusing unlawful conduct. The consequence of this ruling, that allegedly guilty defendants will not be fully prosecuted, is indeed offensive to our concept of the criminal justice system.[4] However, the remedial objectives of the exclusionary rule are well served here, and the rule was appropriately applied by the district court.

■ The dissent urges that a reversal is necessary under the independent source rule. A case should not be reversed on appeal on a ground not raised in the district court or in this court. It is well settled that a party cannot shift its theory of recovery in this court, and the district court is not obligated to search the record for unraised issues ignored by counsel. *United States v. Filker*, 972 F.2d 240, 242 (8th Cir.1992); *United States v. Ragan*, 952 F.2d 1049 (8th Cir.1992). Here, it is significant that the government did not raise this

---

**3.** For discussion of decisions holding that the connection between police misconduct and evidence of crime may be sufficiently attenuated to permit use of the evidence, see *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

**4.** *See United States v. Leon*, 468 U.S. at 908, 104 S.Ct. at 3412.

issue below and has not raised this issue on appeal.

Under the dissent's application of the independent source rule, the knock and announce rule codified under § 3109 would be meaningless since an officer could obviate illegal entry in every instance simply by looking to the information used to obtain the warrant. Under the dissent's reasoning, officers, in executing a valid search warrant, could break in doors of private homes without sanction.

The dissent's reliance on *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), is misplaced. There, the illegal entry was not related to the evidence later seized. Upon the illegal entry, the police merely secured the apartment for some nineteen hours, waiting for a new search warrant to be obtained. The search itself was deemed reasonable because it was based on an independent source which provided probable cause for the issuance of the search warrant. In the present case, the officers seized the evidence immediately upon their illegal entry. Title 18, United States Code, Section 3109 is a congressional mandate; the violation of it makes the search unreasonable per se. *United States v. Miller,* 357 U.S. 301, 307–14, 78 S.Ct. 1190, 1194–98, 2 L.Ed.2d 1332 (1958); *United States v. Murrie,* 534 F.2d 695, 698 (6th Cir.1976). *See also United States v. Dicesare,* 765 F.2d 890, 895 (9th Cir.) ("If the officers did violate the statute [by failing to knock and announce], the evidence seized during the search must be suppressed"), *amended on other grounds,* 777 F.2d 543 (1985); *United States v. Kane,* 637 F.2d 974 (3d Cir.1981) ("the section has been interpreted to exclude evidence obtained in a search where officers had not complied" with its provisions).

The dissent misreads *Segura.* It overlooks the fact that the Court of Appeals in *Segura* affirmed the district court's suppression of the evidence initially observed by the officers in plain view upon their illegal entry. *United States v. Segura,* 663 F.2d 411, 414–15 (2d Cir.1981). The Supreme Court specifically stated that the government did not challenge that ruling

and noted that "no issue concerning items observed during the initial entry is before the Court." *Segura v. United States,* 468 U.S. at 804, 104 S.Ct. at 3385. Thus, the Court of Appeals opinion in *Segura* suppressing the evidence obtained on the illegal entry actually supports our holding.

The significant factor in *Segura* is that the search warrant and the evidence seized under it were totally unrelated to the illegal entry. In the present case the search warrant, although legally obtained, was executed in violation of § 3109, and its execution was directly connected to the illegal entry.

### IV.

For the foregoing reasons, the judgment of the district court is affirmed. The evidence seized in violation of 18 U.S.C. § 3109 is suppressed and shall not be used as evidence against the Martses in the trial of this matter.

FAGG, Circuit Judge, dissenting.

Under the independent source doctrine, a court cannot suppress evidence gathered in a warrant search following an illegal entry if the warrant was issued on information from sources unrelated to the entry and the illegal entry did not contribute to the discovery of the evidence seized under the warrant. *Segura v. United States,* 468 U.S. 796, 799, 814–15, 104 S.Ct. 3380, 3382, 3390–91, 82 L.Ed.2d 599 (1984). By refusing to apply the doctrine, the panel mistakenly suppresses evidence discovered and seized by the officers during their warrant-authorized search of the Martses' home. Thus, I respectfully dissent.

I believe this case is controlled by *Segura* and *Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988). In *Segura,* federal agents illegally entered an apartment and remained until a search warrant was issued solely on information known to the agents before their illegal entry. Although the district court suppressed both evidence the agents observed before the warrant issued and evidence the agents discovered in the warrant search, the government only challenged the ruling

suppressing the evidence discovered in the warrant search. The Supreme Court held that evidence discovered for the first time in the warrant search following the illegal entry should not be suppressed because "the information possessed by the agents before they entered the apartment constituted an independent source for the discovery and seizure of the evidence." *Segura,* 468 U.S. at 814, 104 S.Ct. at 3390.

In *Murray,* federal agents illegally entered a warehouse, discovered marijuana, and then left to obtain a search warrant. The officers applied for a warrant without mentioning the illegal entry or relying on what they had seen during the entry. After the warrant was issued, the agents immediately reentered the warehouse, conducted their warrant search, and seized the marijuana. Notwithstanding the agents' earlier, illegal entry, the Supreme Court held the marijuana should not be suppressed if the warrant search "was in fact a genuinely independent source of the ... evidence at issue." *Murray,* 487 U.S. at 542, 108 S.Ct. at 2536. Thus, the Court was willing to apply the independent source doctrine to the marijuana seized in the warehouse as long as the agents did not exploit their illegal entry to secure the warrant. *Id.* The Court reemphasized its holding in *Segura* that an illegal entry by police officers does not taint evidence found when executing a valid search warrant obtained with information independent of the entry. *Id.* at 535, 538, 108 S.Ct. at 2532, 2533.

I believe the Martses' case is an even stronger case than *Segura* or *Murray* for application of the independent source doctrine. Unlike those cases, the officers in this case obtained the search warrant before entering the Martses' home. Like the officers in *Segura,* the officers in this case made an illegal entry. The panel recognizes, however, the Martses' search warrant was "legally obtained," *ante* at 1220, and Steven Marts makes clear the evidence was found "after the entry" when "a thorough search began." Brief for Steven Lester Marts at 5. Thus, the officers did not exploit their illegal entry. Because the information used to obtain the search warrant was independent of the illegal entry and the illegal entry did not contribute to the discovery of the evidence seized under the warrant, the evidence should not be suppressed. *Murray,* 487 U.S. at 537–38, 541–42, 108 S.Ct. at 2533–34, 2535–36; *Segura,* 468 U.S. at 799, 813–15, 104 S.Ct. at 3382, 3389–91.

The panel's position that the evidence gathered at the Martses' home must be suppressed because the officers' warrant search was conducted "immediately upon their illegal entry," *ante* at 1220, finds no support in the teachings of *Segura* and *Murray.* Instead, the panel overlooks *Segura's* and *Murray's* clear application to this case: the information used to obtain the warrant is an independent source for the discovery of the evidence. In these circumstances, "[w]hether the [officers'] initial entry [into the Martses' home] was illegal or not is irrelevant to the admissibility of the challenged evidence." *Segura,* 468 U.S. at 813, 104 S.Ct. at 3390.

The panel's suggestion that the officers' violation of 18 U.S.C. § 3109 "makes the search unreasonable per se," *ante* at 1220, is contrary to *Segura* and *Murray* and effectively cancels the warrant procedure. The panel fails to recognize that § 3109 does not control the execution of a valid search warrant, it only delays the police officers' entry to give the occupants "a brief opportunity ... to order [their] personal affairs before the [officers] enter." *United States v. Kane,* 637 F.2d 974, 977 (3d Cir.1981). Because the warrant procedure protects the occupants' full array of privacy rights, the officers' entry under a legally obtained search warrant is inevitable. *United States v. Nolan,* 718 F.2d 589, 602 (3d Cir.1983). Thus, the panel's "per se" invocation of the exclusionary rule impermissibly "put[s] the [officers] (and society) not in the *same* position they would have occupied if no violation [of § 3109] occurred, but in a *worse* one." *Murray,* 487 U.S. at 541, 108 S.Ct. at 2535.

Contrary to the panel's view, the independent source doctrine does not render § 3109 "meaningless" or allow police officers to "break in doors of private homes

without sanction." *Ante* at 1220. The incentive to obey the statute remains: police officers know that any evidence seized "as a direct result of the entry may be suppressed." *Segura,* 468 U.S. at 812, 104 S.Ct. at 3389. Indeed, officers armed with a search warrant would be foolhardy to enter early in violation of § 3109 because they have no way of knowing what they will see, hear, or learn when they enter. *See Murray,* 487 U.S. at 540, 108 S.Ct. at 2534. Thus, application of the independent source doctrine to § 3109 violations fits squarely with the Supreme Court cases in which evidence gained when the police exploited a § 3109 violation was suppressed. *See Sabbath v. United States,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) (holding officers' illegal entry under § 3109 to arrest defendant required suppression of evidence seized in search incident to arrest); *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958) (same).

The panel suggests we cannot reverse the district court because the independent source doctrine was "not raised in the district court or in this court." *Ante* at 1219. The panel's position is not well taken. The government and the Martses raised and briefed the doctrine on appeal. *See* Brief for the Government at 21–23; Brief for Steven Lester Marts at 20–21; Brief for Pamela Sue Marts at 19–21. The Martses do not argue the doctrine was waived because it was not presented in the district court. In these circumstances, the courts of appeals uniformly exercise their discretion to entertain a purely legal question when the necessary facts appear in the record, and the application of the relevant principle is clear. *See Cleland v. United States,* 874 F.2d 517, 522 n. 6 (8th Cir.1989). Further, although the panel did not mention the independent source doctrine by name, the panel rejected the government's argument for reversal based on the doctrine. *Ante* at 1219. Thus, I believe the doctrine is before the court for consideration on the merits.

In my view the panel has dismantled the independent source doctrine. The officers' illegal entry into the Martses' home did not contribute in any way to the discovery of the evidence seized under the independently-issued search warrant. Thus, we have a classic case for the doctrine's application. I would reverse the district court's order suppressing the evidence seized under the search warrant because the officers violated § 3109.