# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3809

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal From the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Timothy John Vaudt, also known | * | |
| as Fudd, | * | PUBLISHED |
| | * | |
| Appellant. | * | |

_____

Submitted: June 22, 2005
Filed: July 5, 2005

_____

Before MELLOY, HEANEY, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Timothy John Vaudt was convicted of conspiracy to manufacture and distribute fifty grams or more of actual methamphetamine within a protected location[1] and possession of a firearm during a drug trafficking offense.[2] He was sentenced to a term of 120 months of imprisonment for the controlled substance violation and a

_____

[1] 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, 860(a).

[2] 18 U.S.C. § 924(c)(1)(A)(i).

consecutive 60-month term for the gun crime. On appeal, he argues the district court[3] erred in failing to suppress evidence found during a search of his residence. We affirm.

## BACKGROUND

At approximately 6:00 a.m. on August 21, 2002, Calhoun County Sheriff William A. Davis was patrolling a section of Rinard, Iowa. As he drove by Vaudt's house, he noticed two exhaust fans in a basement window, and thought he saw a thick white smoke coming out of the fans. Davis claimed that the smoke had a faint chemical odor that he could smell when the wind blew the smoke to his position across the street.

A registration check on a gray Buick Skylark in Vaudt's driveway revealed that the car's owner was Eugene Schneider, a person whose residence had recently been linked to the manufacture of methamphetamine. According to Davis, another county's sheriff's office informed him that Vaudt was letting people use his house to manufacture methamphetamine.

Davis called a deputy to assist him at Vaudt's residence. While waiting for the deputy, Davis saw a woman come out of Vaudt's house carrying a yellow sack. She put the sack in the Skylark, and then went back inside. When the deputy arrived shortly thereafter, he and Davis went to Vaudt's door to investigate the possible manufacture of methamphetamine. Teresa Schneider, the same woman who Davis had seen with the yellow sack, answered the door. She first claimed she had just woken up, but then admitted she had put the yellow sack in the Skylark earlier in the

---

[3]The Honorable Mark W. Bennett, Chief Judge, United States District Court for the Northern District of Iowa, adopting the Report and Recommendation of Paul A. Zoss, United States Magistrate Judge for the Northern District of Iowa.

morning. She told Davis that she saw him on patrol and told Vaudt, which caused Vaudt to flee the house.

Davis asked Schneider if she would show them what was in the sack, and she eventually retrieved it from the car. In the sack was a plastic container which contained residue from making methamphetamine. She told the officers she was supposed to get rid of the residue. She gave the officers permission to search the car, which contained a number of materials that are commonly used in the manufacture of methamphetamine. Schneider then admitted to Davis that she was thinking about stealing some anhydrous ammonia, a common ingredient in the manufacture of methamphetamine, to make some money. When Schneider went back into the house to get her cigarettes and a drink of water, she was followed in by the deputy, who thought he smelled anhydrous ammonia inside the house.

Based on this information, a magistrate issued a search warrant for Vaudt's residence. Although no methamphetamine manufacturing was underway at the time the warrant was executed, officers found firearms and items related to the manufacture of methamphetamine. Vaudt was subsequently charged with the above offenses, and moved to suppress the evidence recovered from the search on the basis that the affidavit in support of the search warrant and its attached exhibits did not establish probable cause. The district court denied the motion, and Vaudt went to trial. He was convicted and sentenced to a cumulative term of 180 months of imprisonment, to be followed by ten years of supervised release. This appeal followed.

## ANALYSIS

Vaudt's sole claim on appeal is that the district court erred in determining that the affidavit and its attachments supported a finding of probable cause. The government suggests that this is a mixed question of law and fact, that Vaudt did not

file objections to the magistrate's Report and Recommendation on this basis, and thus we review only for plain error. It is true that if Vaudt sought to challenge any factual findings on appeal, we would review them for plain error. See United States v. Looking, 156 F.3d 803, 809 (8th Cir. 1998). That, however, is not his claim. Rather, he simply states that the undisputed information in the affidavit did not rise to the legal standard necessary to establish probable cause. Thus, the issue before us is strictly a legal one. Even where a defendant fails to object to a Report and Recommendation, this court reviews "de novo the ultimate question of whether the Fourth Amendment has been violated." United States v. Collins, 321 F.3d 691, 694 (8th Cir. 2003) (quoting United States v. Neumann, 183 F.3d 753, 755 (8th Cir. 1999)); accord United States v. Leppert, 408 F.3d 1039, 1041 (8th Cir. 2005) (reviewing de novo the issue of whether a warrant was supported by probable cause where no facts were in dispute).

Before a warrant may issue, the issuing magistrate must be convinced that, based on the totality of circumstances, there is a "fair probability" that evidence of a crime or contraband will be found in the place to be searched. Illinois v. Gates, 462 U.S. 213, 238 (1983). "Additionally, 'probable cause may be established by the observations of trained law enforcement officers or by circumstantial evidence.'" United States v. Terry, 305 F.3d 818, 823 (8th Cir. 2003) (quoting United States v. Searcy, 181 F.3d 975, 981 (8th Cir. 1999)).

The essence of Vaudt's claim is that neither the methamphetamine residue, nor the chemical odors emanating from his house, nor the items seized from the Skylark parked in his driveway, nor the officers' conversation with Schneider, did anything to tie his residence to the manufacture of methamphetamine. We disagree. The issuing magistrate knew that, according to an officer with twenty years of experience and four years dedicated to methamphetamine lab investigations: (1) a Buick Skylark in Vaudt's driveway belonged to someone associated with methamphetamine manufacture; (2) Vaudt was potentially allowing people to cook methamphetamine

in his house; (3) at approximately 6:30 a.m. Schneider exited Vaudt's house and placed methamphetamine residue in the Skylark; (4) when questioned by police around 7:00 a.m., Schneider told police she was supposed to get rid of the residue; (5) items in the Skylark were of the type typically used to manufacture methamphetamine; and (6) Vaudt fled his residence when he was told the police were outside. This was more than sufficient information to support the view that there was a fair probability that Vaudt's house was associated with methamphetamine manufacture and may contain contraband or evidence of criminal activity.

## CONCLUSION

For the reasons stated above, we affirm.

_____