# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3775

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Damion J. Morris, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 12, 2005
Filed: January 31, 2006

_____

Before COLLOTON, McMILLIAN,[1] and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Damion Morris entered a conditional plea of guilty to a charge of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and to a forfeiture count, in violation of 21 U.S.C. § 853, reserving the right to appeal the district court's[2] denial of his motion to suppress evidence. We affirm.

_____

[1]The Honorable Theodore McMillian died on January 18, 2006. This opinion is filed by the remaining members of the panel pursuant to 8th Cir. Rule 47E.

[2]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable James

Morris's motion to suppress evidence concerned the execution of a search warrant conducted at his residence in Springfield, Missouri, on April 28, 2003, at about 9:40 p.m. Officers obtained a warrant to search the residence for marijuana, and the warrant was executed by the Special Response Team ("SRT") of the Springfield police department. Morris's challenge to the search turns on whether the search was rendered unreasonable by the failure of the officers properly to knock and announce their presence before entering. *See Wilson v. Arkansas*, 514 U.S. 927, 930 (1995).

At the entrance to Morris's residence, there were two doors located at the front entryway: an outer screen door and an inner wood-framed front door with a small window. In accordance with standard procedure of the SRT, Officer Troy Jensen knocked and announced at the screen door, and then attempted to open the screen door, which he found to be locked. Two seconds after making his announcement, Jensen opened the screen door with the assistance of a tool and without damaging the door. After the screen door was opened, officers moved toward the inner door, and Corporal Scott Umbarger advised the other officers that he saw through the window that a person was walking toward the front door. Officer Don Mitchell stepped up to the door and saw a male come to the window of the door and look out. Mitchell announced, "Police officer, search warrant." He then heard the sound of running on a wood floor. Shortly thereafter, convinced that no one was going to open the door, Mitchell breached the door by using a ram to strike the door three times.

When the officers entered the residence, they saw an individual leaving the living room. Corporal Umbarger pursued the person down a hallway and eventually found Morris in a bedroom with a female. Morris testified that he was sitting in a recliner when he heard a crack on the door. He said that he did not hear officers state, "police, search warrant," and that upon hearing the noise, he ran to the back of the

---

C. England, United States Magistrate Judge for the Western District of Missouri.

house to alert his girlfriend, who was seven months pregnant, that "something was going on." Officers eventually discovered marijuana and cocaine in the residence.

The district court, adopting the magistrate's report and recommendation, denied the motion to suppress on two grounds. First, the court found that when officers saw Morris look out the window and run down the hall, there existed exigent circumstances that excused compliance with the knock-and-announce requirement. *See United States v. Banks*, 540 U.S. 31, 36-37 (2003). Alternatively, the court concluded that even in the absence of exigent circumstances, the officers had complied with the knock-and-announce requirement, because at least twelve seconds elapsed between Officer Jensen's initial announcement at the screen door and the breach of the wooden front door to the house.

Morris raises on appeal an issue not addressed by the district court: whether the breach of the screen door, which occurred only two seconds after Jensen's knock and announcement, was an unreasonable search that requires suppression of evidence later seized in the house after police breached the inner wooden door. The government argues that this contention is subject to review only for plain error, because Morris did not present the argument to the magistrate judge or in his objections to the magistrate's report and recommendation.

After reviewing the materials presented to the district court, we do think the issue was fairly raised. In his brief in support of the motion to suppress, Morris argued that both Officer Jensen (who breached the screen door) and Officer Mitchell (who breached the inner door) forcibly entered the residence in violation of the Fourth Amendment. (J.A. at 17). Morris said the violation occurred when the officers forced entry at the same time as they knocked and announced, "as set forth in Officer Schindler's report." (*Id*. at 12). Morris quoted a portion of Schindler's report stating that "Officer Jensen knocked and announced in a loud and clear voice "Police Search Warrant" *as he pryed [sic] open the locked screen door*." (*Id*.). He also quoted 18

U.S.C. § 3109, which authorizes an officer to "break open *any outer or inner door* or window of a house" if he is refused admittance after knocking and announcing. (J.A. at 13) (emphasis added). We thus conclude that Morris fairly raised a challenge to the breach of the screen door and, although he did not argue the point in his objections to the report and recommendation, we nonetheless review "de novo the ultimate question whether the Fourth Amendment has been violated." *United States v. Vaudt*, 413 F.3d 724, 726 (8th Cir. 2005).

Morris contends that the breach of the outer screen door violated the Fourth Amendment, because the officers waited only two seconds after knocking and announcing before they forced open the door. We will assume that the opening of the locked screen door, although it gave access only to the small space between the screen door and the inner door, was a "search" for purposes of the Fourth Amendment, as the police entered an area immediately adjacent to and associated with the home. *See United States v. Oliver*, 466 U.S. 170, 180 (1984). The government implicitly concedes that a two-second delay after announcing does not comply with the common law knock-and-announce rule, but argues that it was reasonable to open the screen door without following the rule, because the breach was necessary "to secure proper positioning in the event a forced entry became necessary." The contention seems to be that although the police did not have cause, when the screen door was breached, to enter the dwelling proper without complying with the knock-and-announce requirement, the potential that an exigency would arise later justified an immediate breach of the first barrier presented by the screen door.

It may be that in some instances, the flexible requirements of "reasonableness" under the Fourth Amendment would permit the breach of a screen door without a prior knock and announcement, even where there is no basis to enter the remainder of the residence immediately. Felony drug investigations frequently present circumstances where police officers have reason to believe that evidence would likely be destroyed if advance notice were given, *Richards v. Washington*, 520 U.S. 385, 391 (1997), and

-4-

this is not a case where police knew that the individuals present at the residence had no connection to the drug activity, or where the type of drugs named in the warrant were impossible to destroy quickly. *Id.* at 393. The government does not here contend, however, that the risk of destruction of marijuana, in and of itself, justified dispensing with the knock-and-announce procedure. The argument advanced is that if police were to gather *additional* reasons to believe that evidence might be destroyed, then the marginal delay attendant to opening the outer door would interfere with recovery of the evidence, such that the preliminary breach of the screen door was a reasonable preparatory step. On the evidence in this record, we are not prepared to conclude that the time required to open the screen door and reach the inner door, which appeared to be only two seconds, was great enough to support the government's theory of reasonableness.

We turn, therefore, to the question whether an unreasonable opening of the screen door without adequate announcement requires suppression of the evidence obtained from the interior of Morris's dwelling. In considering this problem, we first conclude that the officers' subsequent breach of the inner door was reasonable. The district court made factual findings, crediting the testimony of police officers, that a person appeared at the window of the door after police knocked, and then disappeared as police heard a running noise. We reject Morris's contention, based on inconsistencies between the testimony and a police report, that it was clear error for the district court to believe the testimony of these officers. The evidence of what occurred while police were outside the front door, combined with the risk of destruction of evidence present in most narcotics cases, easily satisfied the requirement that police have reasonable suspicion that further compliance with the knock-and-announce requirement would inhibit the effective investigation of the crime. *See Richards*, 520 U.S. at 394.

Even if we do not consider the claimed exigency, moreover, the district court credited the testimony of officers that they waited ten seconds, after knocking and

announcing, before they broke down the inner door. (Morris correctly points out that the district court's finding of a twelve-second wait is not supported by the record, but the court did credit the testimony of the officers, and the record clearly supports an interval of ten seconds). The reasonableness of a delay by police after announcing their presence varies with the circumstances of each search. Here, given the risk of destruction of evidence usually present in drug trafficking investigations, the relatively modest size of the home that an occupant would have to traverse to answer the door, and the likelihood that occupants would be awake at the time of the search, we conclude that entry into the residence of a drug trafficking suspect, ten seconds after knocking and announcing at a reasonable evening hour, was constitutionally reasonable. *See United States v. Jones*, 208 F.3d 603, 610 (7th Cir. 2000); *United States v. Myers*, 106 F.3d 936, 940 (10th Cir. 1997); *United States v. Gatewood*, 60 F.3d 248, 250 (6th Cir. 1995); *United States v. Knapp*, 1 F.3d 1026, 1031 (10th Cir. 1993); *United States v. Garcia*, 983 F.2d 1160, 1168 (1st Cir. 1993); *cf. Banks*, 540 U.S. at 38 (wait of 15 to 20 seconds after knock and announcement was reasonable); *United States v. Lucht*, 18 F.3d 541, 549 (8th Cir. 1994) (officers were constructively refused admittance after waiting 20 seconds); *United States v. Streeter*, 907 F.2d 781, 788-89 (8th Cir. 1990) (surveying case law on time limit under § 3109), *overruled on other grounds by United States v. Wise*, 976 F.2d 393, 401 (8th Cir. 1992) (en banc).

As for whether the initial breach of the screen door mandates suppression of evidence seized in the house, our court held in *United States v. Marts*, 986 F.2d 1216 (8th Cir. 1993), in the context of 18 U.S.C. § 3109, that an entry in violation of the knock-and-announce rule required suppression of evidence obtained immediately upon the illegal entry. *Id*. at 1220. A divided panel rejected the argument that because the information leading to the issuance of the warrant was obtained independent of any knock-and-announce violation, the evidence should be admissible under the independent source doctrine. *See Segura v. United States*, 468 U.S. 796 (1984). After finding it "significant" that the government did not raise this argument in the district court or on appeal, *id*. at 1219-20, the *Marts* panel observed that the

officers in question "seized the evidence immediately upon their illegal entry," and expressed concern that if the evidence were not suppressed, then "officers, in executing a valid search warrant, could break in doors of private homes without sanction." *Id.* at 1220.

*Marts* involved a single search: Officers opened a door to a trailer without proper knock and announcement, and then discovered evidence immediately upon their entry. In cases involving a *second* search after an initial search that violated the knock-and-announce rule, the Ninth Circuit has held that the exclusionary rule should not apply. Where officers executing a search warrant illegally entered a gated alcove outside of an apartment, but then lawfully entered into the solid doorway of the apartment by appropriate compliance with the knock-and-announce rule, the court held that the procurement of the warrant and the lawful entry of the apartment were sufficient to "purge the evidence of any taint from the illegal entry." *United States v. Moreno*, 758 F.2d 425, 427 (9th Cir. 1985). The court explained that "the information from which the warrant was procured was completely distinct from the illegal entry," that "no evidence was obtained between the time of the illegal entry into the alcove and the entry into the remainder of the apartment after compliance with section 3109," and that the disputed evidence was seized only after the latter entry. *Id.* Subsequently, in an unpublished opinion applying *Moreno*, the Ninth Circuit concluded, in a case almost identical to this one, that the search of a home would be "purged of the taint of the opening of the locked screen door in violation of 18 U.S.C. § 3109 if the second entry through the wooden door was proper." *United States v. Otero*, No. 91-10475, 1993 WL 6618, at *3 (9th Cir. Jan. 14, 1993) (unpublished mem.).

Surveying this landscape, the Sixth Circuit has distinguished between cases involving a single illegal entry and search, such as *Marts*, and cases also involving a second search pursuant to a valid warrant, such as *Moreno*. Considering a case in which police entered a single door to a residence without following the knock-and-

announce requirement, the court held that evidence seized following "a single, illegal search" must be suppressed, and that the independent source rule did not apply. *United States v. Dice*, 200 F.3d 978, 986 (6th Cir. 2000). The *Dice* court reasoned that a knock-and-announce violation "deems a search illegal due to the unlawful method in which it was executed even if the search were legal in its purpose and authority (as demonstrated by a valid warrant)." *Id.* at 985. The court intimated, however, that the result may well be different in a case involving a second search that has both a valid warrant (purpose) and a legal entry (method). *Id.* at 985-86.

This is a two-search case. The first search, conducted by prying open the screen door, did not comply with the Fourth Amendment. The second search, involving a breach of the inner door to the residence, was lawful. The one-search precedent of *Marts* is thus not controlling, and we are persuaded by the analysis of the Ninth Circuit in *Moreno* that *Marts* should not be extended to a two-search case like this one. As in *Moreno*, the warrant to search Morris's residence was procured based on information completely distinct from the illegal breach of the screen door, and no material evidence was obtained between the time of the illegal entry through the screen door and the lawful entry into the residence. The seizure of evidence was thus accomplished through a valid warrant and a legal entry, and suppression is not warranted. *Cf. United States v. Langford*, 314 F.3d 892, 894-95 (7th Cir. 2002). Accordingly, we hold that the district court correctly denied the motion to suppress evidence.

The judgment is affirmed.

_____